In re BUILDING BLOCK CHILD CARE CENTERS, INC.,
Debtor.

ECPG (Peoria) Associates Limited Partnership, Appellant,

v.

Building Block Child Care Centers, Inc., Appellee.

BAP No. AZ–98–1636–RMeP.
Bankruptcy No. 97–01143–PHX–GBN.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 20, 1999.

Decided May 26, 1999.

Neal H. Bookspan, Schian Walker, P.L.C., Phoenix, AZ, for ECPG (Peoria) Associates Limited Partnership.

James B. Rolle, Phoenix, AZ, for Building Blocks Child Care Centers, Inc.

Before: RUSSELL, MEYERS, and PERRIS, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge.

The bankruptcy court entered an order determining that a chapter 11 [1] debtor was not required to cure prepetition defaults owed to a former landlord in order to assume a lease with a successor landlord, notwithstanding the former landlord's retention of the right to receive the cure payments. The former landlord appeals. We REVERSE.

## I. FACTS

The material facts are not in dispute. In October 1989, appellant ECPG (Peoria) Associates Limited Partnership ("ECPG"), as landlord, and Kids Are People Too, Inc., as tenant, entered into a lease of retail space (the "Lease") at the Glendale Galleria shopping center in Glendale, Arizona. In December 1992, with ECPG's approval, Kids Are People Too, Inc. assigned its interest under the Lease to appellee Building Blocks Child Care Centers, Inc.

Appellee (hereinafter the "debtor") filed a voluntary chapter 11 petition in January

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

1997. At that time, the debtor owed ECPG $34,006 in prepetition rent. ECPG sold the shopping center to Excel Realty Trust, Inc. ("Excel") in July 1997. Under the terms of sale, ECPG assigned its rights under the Lease to Excel but specifically retained the right to receive any cure payments for prepetition rent if the debtor assumed the Lease.

The debtor obtained several extensions of time in which to assume or reject the Lease. Eventually, it filed a Motion Seeking Determination of Necessity of Compliance with 11 U.S.C. § 365(b)(1)(B) (the "Motion") to determine if it was required to cure the prepetition defaults owed to ECPG in order to assume the Lease with Excel. The bankruptcy court ordered the parties to brief the issue.

ECPG's brief argued that the debtor was required under the plain language of § 365(b)(1)(A) to cure the defaults owed to ECPG prior to assumption, and to assume the Lease in its entirety. ECPG asserted that the debtor was improperly attempting to separate the cure rights, which ran in favor of ECPG, from all other rights under the Lease, which ran in favor of Excel. ECPG argued that the fact that both ECPG and Excel had rights under the Lease[2] did not allow the debtor to alter the statutory requirements of § 365(b)(1)(A).

The debtor's brief contended that it was not obligated to cure the defaults in question as a condition of assumption. The debtor argued that ECPG lacked standing to require cure payments because ECPG was no longer a party to the Lease and § 365(b)(1) applied only in cases where a landlord continued to be the landlord postpetition.

The debtor also argued that equitable considerations precluded the proposed cure payments because the debtor lacked the funds to pay ECPG's claim and would be unable to continue paying postpetition

rent to Excel if it were forced to pay ECPG, to the prejudice of both Excel and the debtor. The debtor also contended that partial assignments should not be enforced in courts of equity such as bankruptcy courts where, as in this case, enforcement of a partial assignment would cause hardship to the debtor.

ECPG's Response argued that the retention of its cure rights under the Lease conferred standing upon it to assert those rights, and that the unambiguous language of § 365(b)(1)(A) clearly required the debtor to cure all defaults prior to assumption. ECPG also challenged the debtor's argument that partial assignments should not be enforced by courts of equity where enforcement would cause hardship to a debtor, contending that any hardship suffered by the debtor was imposed by the Code and not the partial assignment in question. ECPG characterized the debtor's partial assignment argument as an attempt to obtain a windfall at ECPG's expense.

The court held a hearing on the Motion on August 18, 1998. Following oral argument, the court ruled from the bench that the debtor was not required to cure the prepetition defaults owed to ECPG in order to assume the Lease. On August 24, 1998, the court entered an order on the Motion, which stated in pertinent part:

[I]t is inappropriate and not within the scope and intent of the provisions of 11 U.S.C. § 365(b)(1)(B) to require the debtor to cure or make adequate arrangements to cure pre-petition rent owing to a former landlord who is not the current landlord as a condition of the Debtor assuming the lease with the successor landlord which lease was in existence prior to the filing of the initial petition herein.

IT IS THEREFORE ORDERED, ADJUDGED AND DECLARED that

---

**2.** ECPG acknowledged that the facts of the case were somewhat unusual, in that the terms of sale of the shopping center allowed

ECPG to retain the rights to receive cure amounts under the Lease despite the fact that Excel became the landlord under the Lease.

Debtor need not cure or made [sic] adequate arrangements to cure the prepetition rental obligation owing by Debtor to ECPG (Peoria) Associated Limited Partnership as a condition precedent to the Debtor accepting the existent executory contract (lease) on the space from which Debtor presently conducts its business. The Court's complete ruling is contained in a transcript of the August 18 hearing.[3]

Order On Motion Seeking Determination Of Necessity Of Compliance With 11 U.S.C. § 365(b)(1)(B), pp. 1–2. ECPG appeals.

## II. STANDARD OF REVIEW

■ Statutory interpretation is a question of law reviewed *de novo. In re Beguelin*, 220 B.R. 94, 97 (9th Cir. BAP 1998).

## III. ISSUE

Whether the debtor was required under § 365 to cure prepetition defaults owed to a former landlord in order to assume its lease with a successor landlord, where the former landlord specifically retained the right to receive cure payments upon assumption.

## IV. DISCUSSION

■ ECPG argues that the bankruptcy court erred by not requiring the debtor to cure the prepetition defaults owed to it in connection with assumption of the Lease. We agree.[4]

Section 365(b)(1) governs the assumption of leases. The language of the statute provides:

**11 USC § 365. Executory contracts and unexpired leases**

. . . .

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee [5] may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) *cures, or provide adequate assurance that the trustee will promptly cure, such default;*

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1)(A), (B), and (C) (emphasis added).

■ The language of § 365(b)(1) clearly and unambiguously requires the cure of all defaults before a lease may be assumed. Contrary to the debtor's assertion in the proceedings below, a bankruptcy court's status as a court of equity does not entitle it to elevate equitable considerations over the clear dictates of the Code. *See U.S. v. Ron Pair Enterprises*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (stating that "The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." (citation omitted)).

The bankruptcy court in this case, however, inserted a distinction between "former" and "existing" or "current" landlords into the language of § 365(b):

*See* Transcript of hearing on Motion, pp. 8–11.

---

**3.** The last sentence was interlineated in the Order by hand, apparently by the Court.

**4.** We also agree that ECPG's retention of its cure rights under the Lease conferred standing upon it to assert those rights in the proceedings below and upon appeal. The bankruptcy court erred in ruling to the contrary.

**5.** Section 1107 confers upon a debtor in possession all of the rights and powers of a trustee serving in a chapter 11 case. *See* 11 U.S.C. § 1107(a).

I understand the argument that's been received here. The argument is that the former landlord loses the benefit that 365(b) grants a current landlord, which is a payment of its pre-petition arrearages, and creates a windfall to the debtor. I think that's true, but I think this unusual provision of the code, which allows a particular creditor, which is the landlord of the debtor to have its pre-petition claim paid in connection with an assumption, was clearly drafted by Congress to benefit a specific class of creditors: the existing landlord—not, I don't believe, a past landlord; not, I don't believe, a future landlord—but the current landlord.

And consequently, I'm inclined to agree with the debtor in connection with this particular dispute.

Transcript of hearing on the Motion, page 5.

The bankruptcy court further reasoned:

Now, this ruling does not destroy the—whatever claim the former landlord has against the debtor. All the—the impact of this ruling is simply to deny to that creditor the priority over other creditors which is awarded only to, I believe, existing landlords of the debtor at the time of assumption. I think otherwise, although this could well result in a windfall to the debtor, that is indeed the chance that the former landlord took when it chose apparently post-petition to transfer away its position as landlord to another party.

So I'll rule for the debtor in connection with this particular contested matter for the reasons that I've just expressed, finding that there is not an obligation on the debtor to satisfy the pre-petition claim of ECPG.

*Id.* at 11–12.

The plain language of § 365(b)(1)(A) contains no distinction between "former" and "current" landlords, and no case law or other authority supports the bankruptcy court's conclusion. The court erred by engrafting such a distinction into the statute.

Furthermore, the court not only ignored the plain language of § 365(b)(1)(A) but also gave short shrift to ECPG's rights, to ECPG's obvious detriment. As mentioned above, the court stated that "All the—the impact of this ruling is *simply* to deny to that creditor the priority over other creditors...." (Emphasis added). What the court actually did was convert ECPG's rights to prompt payment of 100–cent dollars under § 365(b)(1)(A) to the uncertain status of a general unsecured creditor, thereby "simply" cutting the heart out of ECPG's rights under § 365(b)(1)(A).

■ Although not relevant, the debtor's equitable arguments are totally without merit. The debtor argues that it cannot comply with § 365(b)(1)(A) and it would therefore be inequitable to make it do so. In effect, the debtor argues that it is entitled to a windfall because of the happenstance of the postpetition assignment of the lease. This is amazing circular reasoning. If the debtor cannot comply with § 365(b)(1)(A), then the lease should be rejected.

## V. CONCLUSION

The bankruptcy court erroneously concluded that the debtor was not required under § 365(b)(1)(A) to cure prepetition defaults owed to a former landlord in order to assume a lease with a successor landlord, where the former landlord specifically retained the right to receive the cure payments. Accordingly, we REVERSE.